[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON HEARING IN DAMAGES
Liability has been admitted on the part of the defendant for his assault upon the plaintiff which occurred on August 12, 1993. This Court heard testimony on a hearing in damages on May 10, 2001, May 22, 2001 and May 30, 2001. Both parties were represented by counsel. Following the receipt of transcripts of the hearings, the parties filed initial briefs and then reply briefs the last of which were filed on or about September 7, 2001.
There are four elements to assess damages in this case. They are:
(1) Permanent injury to plaintiff;
(2) Lost income;
(3) Medical bills; and CT Page 13468-gy
(4) Pain and suffering.
Plaintiff has claimed injuries to his feet and toes, but as agreed between the parties, this decision will concern only an interim award concerning the injuries to the plaintiff's back. Since the claims of the plaintiff as to his feet, no permanency rating has yet been established, and, therefore, the injuries to his feet will not be discussed at this time but will be the subject of a subsequent memorandum of decision and judgment.
1. Permanent Partial Disability or Impairment of the Plaintiff's LumbarSpine: Following the assault of August 12, 1993, (hereinafter "assault") the plaintiff sought treatment from Dr. Richard Fischer of Orthopedic Associates of Hartford, after which on November 12, 1993, he was referred to Dr. W. Jay Krompinger, also of Orthopedic Associates of Hartford, who specializes in spine and trauma surgery. Dr. Krompinger found a fracture of L1 of the plaintiff's back which was suffered in 1988, and which was treated in a brace and according to the plaintiff's report to Dr. Krompinger there has been no significant intervening symptomotology. In other words, he was asymptomatic as of August 12, 1993. It is well-settled law in Connecticut that a tort feasor takes his victim as he finds him. There was no evidence of any prior permanency as a result of the 1988 fracture, and since he was asymptomatic as to that injury, under the principle set forth in Tuite v. Stop Shop Cos., 45 Conn. App. 305,310, 311 (1997) the defendant is liable for the full amount of permanent impairment attributed to this accident. Dr. Krompinger found injury to the left lower back and buttocks and injury to L5-S1 disc. Dr. Krompinger put the plaintiff on a course of physical therapy, and on July 22, 1994 recommended a discogram at L4-5 and L5-S1 levels. The discogram was completed and showed an annular tear of the L5-S1 disc. On April 21, 1995, Dr. Krompinger operated on the plaintiff, completing a posterior discectomy on the left at L5-S1 followed by a posterior fusion at the L5-S1. The plaintiff then continued with a course of physical therapy and follow-up visits with Dr. Krompinger. In his report of February 5, 1996, Dr. Krompinger found that the plaintiff had reached maximum medical improvement and awarded him a permanency of the lumbar spine secondary to the injury sustained on August 12, 1993 in the amount of 25 percent. Defendant argues that the percentage of disability was either non-existent or minimal on the basis that an independent medical examination by Dr. Myron Schafer also of Orthopedic Associates and an independent medical examination by Dr. Aris D. Yannopoulos, his deposition being defendant's Exhibit C, who examined the plaintiff on February 2, 1994 and September 21, 1994. Neither found any permanency. CT Page 13468-gz Dr. Schafer's report was not admitted into evidence at this hearing, and he was not deposed. Therefore, the Court will not consider his opinion in this matter. As for Dr. Yannopoulos, the Court discounts the opinion of Dr. Yannopoulos as set forth in his deposition for the following reasons:
(1) He was not the treating physician.
(2) His examinations were before the surgery performed by Dr. Krompinger.
(3) He refers to the 1988 fracture being the cause of the plaintiff's back problems, yet the area injured in 1988 is not the same as that injured on August 12, 1993, and for the reasons stated above the defendant is responsible for the aggravation of any preexisting condition.
(4) He was not definite as to the fracture of 1988 but merely suggested that it could lead to future problems.
(5) The Court cannot believe that Dr. Krompinger whose reports indicate a conservative course of treatment, would have recommended the surgery if he felt it was unnecessary.
Therefore, the Court accepts the 25 percent permanent partial disability or impairment to the lumbar spine. At the time the permanency was awarded, the plaintiff was 38 years old giving him a life expectancy of 38 years. The Court believes that $2,500 per year is a reasonable amount for the permanent disability/impairment. This figure multiplied by 38 years life expectancy is $95,000 which the Court hereby assesses as damages for the permanent partial impairment of the plaintiff's lower back.
According to the reports in evidence, Dr. Krompinger concluded that the plaintiff, following the surgery, had an element of reflex sympathetic dystrophy (RSD). Dr. Neal Goldberger agreed with Dr. Krompinger, and the plaintiff underwent sympathectomy blocks done by Dr. Goldberger. These blocks only subdued the pain temporarily, and both Drs. Krompinger and Goldberger recommended an open lumbar sympathectomy, and Dr. Krompinger recommended Dr. Philip D. Allmendinger to perform this surgery. However, the only item in evidence regarding that is a letter from Dr. Allmendinger, Plaintiff's Exhibit 7, which indicates that he will do the sympathectomy. However, there is no indication in the records in evidence that it was actually performed. Further, no additional percentage of CT Page 13468-ha disability/impairment was awarded to the plaintiff as a result of that. The reports also indicate that the pain was in the plaintiff's left leg which presumably stemmed from the lumbar spine. However, that is not made clear, and it is possible that the problem with the feet could be related to that. In any event, there is no permanency rating for this, and the blocks and the operation would only add to the period of lost income and additional pain and suffering.
2. Lost Income: Since the plaintiff has not offered any records from the Department of Corrections as to the lost time of the plaintiff as a result of this incident, the Court can only go by the doctor's reports. Dr. Krompinger gave permission for the plaintiff to go back to work for light work from June 3, 1994 to August 5, 1994 and from September 18, 1995 to February 5, 1996. Giving him credit for not being at work at all in view of the necessities of his job, the Court has calculated a total of ill weeks through April 10, 1997. From this should be deducted 4 weeks for the thirty days he was on administrative leave for disciplinary reasons resulting in a net finding by this Court of 107 weeks lost income. 107 weeks times his average weekly wage of $1,206.51 = lost income as a result of his back injury of $129,096.00 which the Court hereby awards.[1]:
3. Medical Expenses: Plaintiff has not submitted medical bills or expenses in full with the exception of printout sheets from Worker's Compensation which is part of Plaintiff's Exhibit 1. The Court is not going to calculate the amount of medical bills which were paid in full through Workers' Compensation. Suffice it to say that the medical bills for plaintiff's injury to his lumbar spine are as set forth in said printout. Plaintiff will either have to pay back Worker's Compensation in which case the medical bills should be part of the judgment against the defendant, or will not have to pay back Worker's Compensation, in which case it appears that payment of these bills should be deducted as collateral source payments. These bills will be part of the judgment at this time prior to any collateral source reduction.
4. Pain and Suffering: This Court has no problem finding the 25 percent impartial impairment of the lumbar spine because it was so designated by Dr. Krompinger. The lost income is based upon the time periods in which the plaintiff was excused from work pursuant to Dr. Fischer's and Dr. Krompinger's reports. However, the amount of pain and suffering cannot be based upon such specificity. The pain and suffering award is based largely upon the credibility of the witnesses. In assessing the credibility of the witnesses the Court has taken into account their demeanor on the witness stand, the manner in which they answered CT Page 13468-hb questions, their bias or sympathy as to both parties, their interest in the outcome of this case, the consistency or inconsistency of their testimony as they gave it and as opposed to the exhibits and the testimony of others as well as the ability to recall or not recall events that transpired.
The witnesses were as follows:
 (a) JONATHAN JAY: Mr. Jay's testimony is discounted to a large degree because of his prior felony record. He was convicted of arson in 1980 and in 1993 he pleaded guilty to possession of a firearm by a convicted felon in United States Federal District Court in Hartford.
 (b) RONALD LAVALLEE: This witness videotaped the plaintiff across the road from the plaintiff's home, approximately seven or eight days after the assault by the defendant. The videotape which was played in court and is Defendant's Exhibit B shows the plaintiff trying to start a weed whacker by pulling a rope to get it started. This went on for approximately 50 minutes, and the videotape shows the plaintiff, shirtless, vigorously pulling the rope several times, crouching down and standing up. It is devastating to the plaintiff's claims of injuries, inability to perform certain activities and his pain and suffering which he allegedly sustained from the assault.
Further, the plaintiff's testimony was somewhat inconsistent as to his activities. Although he may not be able to do certain activities at this time following his operations, during the period between August 12, 1993 and the date of his back operation on April 21, 1995 his claims of inability to go hunting, to drive the Mustang which is a standard shift car, take care of his lawn and ride his motorcycle are not totally credible, particularly in view of his physical exertion with the weed whacker.
Since the plaintiff reached maximum medical improvement as to the lumbar spine when he was given the 25 percent permanent impairment rating, the damages for his pain and suffering as a result of the injury to his back is to cover the period between August 12, 1993 and February 5, 1996. Once he reached maximum medical improvement and was awarded a permanency rating, his compensation for pain and suffering is part of the CT Page 13468-hc permanency rating subsequent to February 5, 1996. His pain and suffering is, therefore, to be assessed for a period of two and one half years. The Court hereby awards damages for pain and suffering for that period as a result of injury to his lumbar spine of $65,000.
 * * * * CONCLUSION
For the injury to the plaintiff's back the Court hereby awards the following:
(1) Permanency................. $95,000
(2) Lost wages................. $129,096
(3) Pain and suffering......... $65,000
Total........................ $289,096
This is, of course, in addition to the medical bills he has incurred. However, this interim judgment is subject to any collateral source payments made to him or on his behalf. Counsel are directed to provide the Court with a memorandum on collateral source payments within fourteen days of the date of this judgment.
Rittenband, JTR